IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-29

No. 252A20

Filed 19 March 2021

IN THE MATTER OF: L.N.G., L.P.G., and L.A.D.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 2 March 2020 by Judge John K. Greenlee in District Court, Gaston County. This matter was calendared for argument in the Supreme Court on 11 February 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Elizabeth Myrick Boone for petitioner-appellee Gaston County Department of Health and Human Services.*

*Everett Gaskins Hancock LLP, by Katherine A. King, for appellee Guardian ad Litem.*

*Garron T. Michael for respondent-appellant mother.*

MORGAN, Justice.

Respondent-mother appeals from the trial court's order terminating her parental rights to her minor children L.N.G. (Nicole), L.P.G. (Peter), and L.A.D. (Andrew).[1] After careful review, we conclude that the trial court properly adjudicated the existence of at least one ground for termination. Thus, we affirm the termination order.

---

[1] Pseudonyms are used to protect the identity of the juveniles and for ease of reading.

## I.    Factual Background and Procedural History

This case was initiated on 15 December 2016, upon the filing of a petition by the Gaston County Department of Health and Human Services (DHHS) alleging that Nicole, Peter, and Andrew were neglected and dependent juveniles. In the petition, DHHS averred that it had been working with the family for several months due to a series of domestic violence incidents which had occurred between respondent-mother and Andrew's father, "Mr. D." Although respondent-mother and DHHS agreed to a case plan on 10 November 2016 in order to allow respondent-mother to address these matters, she and Mr. D. subsequently engaged in an argument in front of the children during which Mr. D. choked respondent-mother and spit in her mouth. Thereafter, DHHS obtained nonsecure custody of all three children.

On 28 February 2017, the trial court entered an order adjudicating Nicole, Peter, and Andrew as neglected and dependent juveniles after respondent-mother stipulated to the allegations in the petition. Two months later, the trial court entered a disposition order. The order established a case plan for respondent-mother which required her to complete domestic violence victim counseling, to complete parenting classes, to complete family counseling with Mr. D., to refrain from exposing the children to domestic violence, to attend and participate in any assessments with Nicole and Peter, and to comply with all recommendations resulting from therapeutic services for Nicole and Peter.

¶ 4 On 12 April 2017, respondent-mother filed a motion for review, seeking to have the juvenile case terminated and thereupon converted to a civil custody case under Chapter 50 of the General Statutes of North Carolina. *See* N.C.G.S. § 7B-911 (2019). In the motion, respondent-mother alleged that she had completed her case plan, that a home study had determined that respondent-mother's home was a safe and reasonable environment for her children, and that respondent-mother had ceased all communication with Mr. D. The trial court entered an order denying this motion on 27 February 2018.

¶ 5 The trial court held its first Review and Permanency Planning Hearing in the case on 23 May 2017. Based on respondent-mother's "significant progress" on her case plan, the primary permanent plan was set as reunification with a secondary permanent plan of guardianship. Respondent-mother was awarded ten hours of weekly unsupervised visitation with the children, which would increase to forty-eight hours weekly after the school year ended.

¶ 6 On 8 June 2017, DHHS filed a Motion for Review after Nicole made a report, following a visit which she had with respondent-mother, that Nicole believed Mr. D. was currently living with respondent-mother and that Mr. D. was in respondent-mother's home during the visit. When a DHHS social worker investigated these claims, Mr. D. admitted that Nicole's report was true. Consequently, DHHS asked the trial court to suspend respondent-mother's unsupervised visitation and instead

to permit her to have two hours of weekly supervised visitation. At a subsequent motion hearing, respondent-mother denied that Mr. D. lived with her. On 19 September 2017, the trial court allowed DHHS's motion to change respondent-mother's visitation to two supervised hours per week.

¶ 7        At a Review and Permanency Planning Hearing conducted on 13 November 2018, DHHS presented additional evidence that challenged respondent-mother's claim that she had ended her relationship with Mr. D. In its resulting order, the trial court found that respondent-mother's neighbor had witnessed the presence of Mr. D. at respondent-mother's home repeatedly over a period of several months. It further found that a private investigator made similar observations over a ten-day period in September 2018. Hence, the primary permanent plan for the juveniles was changed to adoption with a secondary permanent plan of guardianship/reunification.

¶ 8        On 30 July 2019, DHHS filed a petition to terminate respondent-mother's parental rights to the juveniles alleging the grounds of neglect, willfully leaving her children in foster care or a placement outside the home for more than twelve months without making reasonable progress toward correcting the conditions that led to their removal, and willfully failing to pay a reasonable portion of her children's cost of care for the six months preceding the filing of the petition. *See* N.C.G.S. § 7B-1111(a)(1)–(3) (2019). The petition also alleged that respondent-mother had relocated to New York and secured employment there.

The hearing on the termination of parental rights petition was conducted over a two-day period in January 2020. On 2 March 2020, the trial court entered an order terminating respondent-mother's parental rights. The trial court found that grounds existed for termination pursuant to N.C.G.S. § 7B-1111(a)(1)–(2), but it dismissed the third ground which was alleged under N.C.G.S. § 7B-1111(a)(3). At the disposition stage, the trial court concluded that termination of respondent-mother's parental rights was in the children's best interests. Respondent-mother appeals.

## II. Standard of Review

When considering a petition to terminate parental rights, the trial court first adjudicates the existence of the alleged grounds for termination. *See* N.C.G.S. § 7B-1109 (2019). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5–6 (2019) (quoting N.C.G.S. § 7B-1109(f) (2017)). "If a trial court finds one or more grounds to terminate parental rights under N.C.G.S. § 7B-1111(a), it then proceeds to the dispositional stage," *id.* at 6, at which it "determine[s] whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2019).

This Court reviews a trial court's adjudication of grounds to terminate parental rights "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re E.H.P.*,

372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019) (citing *Koufman v. Koufman*, 330 N.C. 93, 97 (1991)). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019).

### III. Willful Failure to Make Reasonable Progress

Pursuant to N.C.G.S. § 7B-1111(a)(2), termination of parental rights is permitted when "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2).

> According to N.C.G.S. § 7B-904(d1)(3), a trial judge has the authority to require the parent of a juvenile who has been adjudicated to be abused, neglected, or dependent to "[t]ake appropriate steps to remedy conditions in the home that led to or contributed to the juvenile's adjudication or to the court's decision to remove custody of the juvenile from the parent, guardian, custodian, or caretaker."

*In re B.O.A.*, 372 N.C. 372, 381 (2019). "[A] trial court has ample authority to determine that a parent's 'extremely limited progress' in correcting the conditions leading to removal adequately supports a determination that a parent's parental rights in a particular child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(2)." *Id.* at 385 (quoting *In re S.N.*, 194 N.C. App. 142, 149 (2008)).

In this case, the children were removed from respondent-mother's care and adjudicated to be neglected and dependent based upon a series of serious domestic violence incidents perpetrated by Mr. D. during 2016. In order to correct the underlying causes of these circumstances, the trial court ordered respondent-mother to complete domestic violence victim counseling.

## A. Challenged Findings of Fact

Respondent-mother first contends that the trial court erroneously determined that the ground of willful failure to make reasonable progress provided a basis for the termination of her parental rights because she "made substantial progress on or completed all components of her case plan." She challenges the following findings of fact,[2] either in whole or in part, which address her progress in rectifying the domestic violence issues that she experienced in her relationship with Mr. D.:

> 42. Respondent/mother failed to demonstrate the ability to protect the juveniles in that she has failed to take the necessary steps to remove herself from relationships involving domestic violence and she has not demonstrated an understanding of the traumatic impact of domestic violence in the home of the juveniles.
>
> . . . .
>
> 47. Respondent/mother has continued a relationship with [Mr. D.] and there have been multiple documented incidents of Respondent/mother and [Mr. D.] continuing to

---

[2] "[W]e limit our review of challenged findings to those that are necessary to support the district court's determination that this ground of respondent-mother's willful failure to make reasonable progress existed in order to terminate her parental rights." *In re A.R.A.*, 373 N.C. 190, 195 (2019).

maintain a relationship as well as additional incidents of domestic violence between them.

. . . .

64. Tony R[.], private investigator, did surveil Respondent/mother's home and did observe [Mr. D.] coming and going from Respondent/mother's home multiple times between September 20, 2018 and September 30, 2018.

. . . .

74. On November 13, 2018, Respondent/mother did attend a hearing on [DHHS's] Motion for Review regarding her visitation with the juveniles. Respondent/mother did testify under oath that she had contact with [Mr. D.] on three (3) occasions: July 2017, Christmas 2018 and September 2018. Respondent/mother did not inform the Court of having been with [Mr. D.] in November 2017 when she had a car accident. Respondent/mother did not inform the Court of [Mr. D.] being at her home on December 17, 2017 when [Mr. D.] did assault her. During her sworn testimony, Respondent/mother did not inform the Court of the incident that had occurred October 12, 2018, just one month prior to the hearing, during which [Mr. D.] did assault her and cause damage to the vehicle she was driving.

. . . .

98. The Court did not find on December 10, 2019 that Respondent/mother is unable to obtain said domestic violence victim's treatment due to her lack of funds and the Court did not order that [DHHS] pay for said treatment. Respondent/mother did testify and this Court does find that she has at all times been employed and does not have difficulty ensuring her bills are paid. Respondent/mother did have the means and ability to comply with domestic violence counseling but she was unwilling to make an effort despite actual knowledge that it was ordered by the Court

on July 18, 2017.

. . . .

101. Respondent/mother has willfully failed to participate in any further therapy for domestic violence though she was specifically ordered to do so by the Honorable Judge Pennie M. Thrower on July 18, 2017.

102. The Court also finds that after Respondent/mother completed domestic violence victims' treatment in early 2017, she continued to engage in a relationship with [Mr. D.] and multiple incidents of domestic violence between Respondent/mother and [Mr. D.] did occur. By her pattern of behavior, Respondent/mother has failed to demonstrate that she has developed the skills required to remove and protect herself and the juveniles from exposure to domestic violence.

. . . .

104. The Court further finds that Respondent/mother continues to minimize the domestic violence that occurred between her and [Mr. D.].

105. The Court further finds that Respondent/mother does not fully appreciate or demonstrate concern about the negative lifelong impact that witnessing and being a part of a toxic domestic violence household has had on the juveniles.

106. The Court further finds that no reasonable progress has been made in correcting the conditions, specifically domestic violence, that brought the juveniles into [DHHS's] custody.

### 1. *Finding of Fact 47*

Finding of Fact 47, which states that respondent-mother maintained a relationship with Mr. D. and that it was marked by multiple new incidents of

domestic violence, was supported by several of the trial court's other findings of fact which respondent-mother has not challenged and therefore are binding on appeal. For example, the trial court found that: (1) Mr. D. assaulted respondent-mother on 15 February 2017; (2) Nicole saw Mr. D. in respondent-mother's home during a visit on 29 May 2017; (3) respondent-mother was in an automobile accident on 17 November 2017 while Mr. D. was a passenger; (4) Mr. D. assaulted respondent-mother at her home on 17 December 2017; (5) DHHS was informed in September 2018 that Mr. D. was living at respondent-mother's home; (6) respondent-mother was again driving with Mr. D. as a passenger on 12 October 2018 when they got into a physical and verbal altercation which resulted in Mr. D. punching respondent-mother in the face; and (7) Mr. D. attended respondent-mother's "launch party" in April 2019, and the two subsequently visited a museum together. Taken together, these unchallenged findings of fact amply support the trial court's Finding of Fact 47.

### 2. *Findings of Fact 64 and 74*

¶ 16        Findings of Fact 64 and 74 refer to specific additional contacts between respondent-mother and Mr. D. Private investigator Tony R. testified that he witnessed Mr. D.'s car parked near respondent-mother's apartment on 20 September 2018, that he witnessed Mr. D. and respondent-mother return together to respondent-mother's parking lot on 26 September 2018, that he witnessed Mr. D. leaving respondent-mother's parking lot on 28 September 2018, that Mr. D.'s vehicle was

back in respondent-mother's parking lot on the evening of 28 September 2018, and that Mr. D.'s car was subsequently in respondent-mother's parking lot on 30 September 2018. This testimony from the private investigator fully supports Finding of Fact 64.

As to Finding of Fact 74, respondent-mother challenges as impossible the portion of the finding which states that respondent-mother testified on 13 November 2018 that she "had contact" with Mr. D. on Christmas 2018, since the date of 25 December 2018 had not occurred yet. Respondent-mother is correct that her testimony represented that she "invited [Mr. D.] to a Christmas party in December 2018." At the termination hearing, respondent-mother testified that the Christmas party actually occurred. While this testimony from respondent-mother herself, along with logical inferences which can be drawn therefrom, is evidence that could support the reference to respondent-mother's Christmas 2018 meeting with Mr. D., this detail in Finding of Fact 74 is unnecessary to support the trial court's ultimate determination that a ground existed which would allow the termination of respondent-mother's parental rights. Accordingly, we shall disregard the portion of Finding of Fact 74 that attributes contact between respondent-mother and Mr. D. on Christmas 2018 to respondent-mother's 13 November 2018 testimony.

### 3. *Findings of Fact 98 and 101*

Findings of Fact 98 and 101 address the additional domestic violence therapy

that respondent-mother was ordered to undergo after it was determined that she was still involved with Mr. D. In the 13 October 2017 order referenced in the termination order,[3] the trial court ordered respondent-mother to "attend therapy to assist the juveniles with healing from the domestic violence they have witnessed and to develop a better understanding of the impact of domestic violence upon them." Respondent-mother submits that this language only requires additional *family* therapy, rather than her own individual therapy. Even assuming that respondent-mother's resourceful interpretation of the wording in the 13 October 2017 finding of fact is correct, there was still ample evidence presented at the hearing that respondent-mother was previously required to engage in additional individual domestic violence therapy and failed to do so. At the termination of parental rights hearing, a DHHS social worker specifically stated that the social worker's team had informed respondent-mother that the parent "needed to engage in further domestic violence counseling[.]" Additionally, respondent-mother does not challenge several of the other findings of the trial court on this issue, including a finding that respondent-mother had "acknowledged that she had been advised to engage in further domestic violence victims' treatment." This evidence supports the trial court's determination that respondent-mother failed to engage in further additional domestic violence therapy

---

[3] The termination of parental rights order references 18 July 2017—the date the underlying hearing occurred—but the resulting order was not entered until 13 October 2017.

as required.

### 4. *Findings of Fact 42, 102, 104, 105, and 106*

¶ 19      Respondent-mother challenges Findings of Fact 42, 102, 104, 105, and 106 to the extent that they show that she failed to make reasonable progress in addressing her domestic violence issues stemming from her ongoing relationship with Mr. D. She argues that her early completion of domestic violence therapy and her months-long separation from Mr. D. after she moved to New York demonstrated that domestic violence was no longer an issue that interfered with her ability to care for her children.

¶ 20      While there is no dispute that respondent-mother completed a counseling program for domestic violence victims in early 2017, her subsequent behavior indicates that she failed to modify her behavior sufficiently as a result of the program. As previously noted, respondent-mother continued to maintain a relationship with Mr. D., despite the fact that he continued to perpetrate domestic violence against her. The trial court's findings reflect that Mr. D. was convicted of the criminal offense of simple assault on 17 October 2018 and the criminal offense of assault on a female on 6 December 2018, based on two separate incidents in which respondent-mother was the victim which occurred after she completed the domestic violence counseling. Respondent-mother did not report these incidents to DHHS or to the trial court. Despite receiving instructions from DHHS to attend additional domestic violence

counseling, respondent-mother failed to do so. The trial court specifically found that respondent-mother "did have the means and ability to comply with domestic violence counseling but she was unwilling to make an effort."

¶ 21      The record reflects that respondent-mother repeatedly misrepresented the status of her relationship with Mr. D. The trial court's order includes seven unchallenged findings detailing respondent-mother's numerous attempts throughout the history of this case to falsely claim that her relationship with Mr. D. had ended. The trial court's findings of fact also reflect that respondent-mother was still socializing with Mr. D. as late as April 2019, which was twenty-eight months after her children entered DHHS custody and nine months before the termination of parental rights hearing.

¶ 22      Respondent-mother's false statements continued through the termination of parental rights hearing itself. The trial court, after evaluating respondent-mother's testimony, assessed her credibility as follows:

> The Court finds that Respondent/mother's testimony during this termination of parental rights hearing was not credible in that she was deceptive, manipulative and dishonest. The Court finds that Respondent/mother did repeatedly attempt to mislead the Court, she did exhibit selective memory and she did attempt to minimize and explain away her continued relationship with [Mr. D.]. The Court did caution Respondent/mother during her testimony of the consequences of perjury and contempt of court.

The trial court was pointedly clear that it did not believe respondent-mother's

accounts of the character of the relationship which she shared with Mr. D. Respondent-mother's misrepresentations concerning her affiliation with her abuser, even offered in her testimony at the termination of parental rights hearing, provided a further foundation for the tribunal's findings of fact in light of its determination of credibility, to which this Court must give deference.

¶ 23    The above-referenced evidence supports the trial court's determination that respondent-mother failed to understand or adequately address the traumatic impact of domestic violence on her children. Over the thirty-eight months that her children were in the custody of DHHS, respondent-mother failed to make meaningful progress to correct the causes of the domestic violence that led to the juveniles' removal from her home.

**B. Adjudication Under N.C.G.S. § 7B-1111(a)(2)**

¶ 24    As to the trial court's adjudication under N.C.G.S. § 7B-1111(a)(2), it properly determined pursuant to the evidence presented during the two-day hearing in January 2020 that respondent-mother did not make a reasonable effort to correct the issues attributable to her relationship with Mr. D. and the prevalence of domestic violence that led to the children's removal from her care. Instead, respondent-mother prioritized her relationship with Mr. D. while falsely and repeatedly claiming that the relationship had ended. Based upon respondent-mother's willful failure to make reasonable progress in addressing her issues with domestic violence, the trial court

properly concluded that her parental rights were subject to termination under N.C.G.S. § 7B-1111(a)(2).

## IV.   Conclusion

Based on the foregoing analysis, we conclude that the trial court properly determined that respondent-mother's parental rights could be terminated pursuant to N.C.G.S. § 7B-1111(a)(2). Since we have determined that this termination of parental rights ground is supported, we need not address respondent-mother's arguments as to the ground of neglect under N.C.G.S. § 7B-1111(a)(1), which is the other ground found by the trial court that could substantiate the termination of respondent-mother's parental rights. *See In re A.R.A.*, 373 N.C. 190, 194 (2019) ("[A] finding of only one ground is necessary to support a termination of parental rights . . . ."). Moreover, respondent-mother does not challenge the trial court's conclusion that termination of her parental rights was in the juveniles' best interests. Consequently, we affirm the trial court's order terminating respondent-mother's parental rights.

AFFIRMED.